IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM R. WRIGHT, JAYDE WRIGHT<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>    Defendant. | Case No. 2:12-409<br><br>Judge Peter C. Economus<br><br>**MEMORANDUM OPINION AND ORDER** |

This action stems from a claim under a homeowners insurance policy (the "Policy") purchased by Plaintiffs William R. Wright and Jayde Wright from Defendant State Farm Fire and Casualty Company. The Policy covered Plaintiffs' residence, which is subject to deed restrictions imposed by the Muirfield Homeowners Association, including requirements contained in the Muirfield Design Standards. (Am. Compl. ¶¶ 3–5, 8.) In February of 2011, a storm caused wind damage to the wood shake roof of Plaintiffs' residence, and they filed a claim with Defendant. (*Id.* at ¶¶ 11–13.) The Muirfield Design Standards require that "[a]ny roof that needs repair must be re-roofed in entirety"; "partial or patch roofing is not permitted." (*Id.* at ¶ 5(b).) However, Defendant refused to pay for complete replacement of the roof, providing reimbursement only for the cost of repairing the damaged portion. (*Id.* at ¶¶ 14–15, 20.)

Plaintiffs initially filed in the Franklin County Common Pleas Court alleging breach of contract, misrepresentation, and bad faith. The case was removed to this Court on the basis of diversity jurisdiction on May 10, 2012 and is currently before the Court on Defendant's motion for summary judgment. (Dkt. 41.) For the reasons set forth below, Defendant's motion is **GRANTED**.

**I.     Standard of Review**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c)(2). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001) (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 556–57 n.7 (6th Cir. 2000).

The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56 (c)). For a dispute to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

II.     **Breach of Contract**

Plaintiffs assert that Defendant breached their insurance contract when it refused to pay for full replacement of their roof.[1] Plaintiffs essentially make two arguments to support their contention that Defendant is obligated to pay for full replacement of their roof: (1) the Policy language is ambiguous and should be construed against Defendant; and (2) the Ohio Administrative Code requires roof replacement. (Dkt. 45 at 9–11.)

   A.     **Policy Language**

The Policy provided coverage for "accidental direct physical loss to the property." (Dkt. 41-1 at 12.) The Policy provided that Defendant:

> *will pay the cost to repair or replace with similar construction and for the same use . . . the damaged part of the property . . .* subject to the following:
>
>   (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;
>
>   (2) when the repair or replacement is actually completed, we will pay the covered additional *amount you actually and necessarily spend to repair or replace the damaged part of the property*, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;
>
>   . . .
>
>   (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Option OL - Building Ordinance or Law Coverage.

---

[1] While the Amended Complaint does not make this clear, Plaintiffs concede in their response brief that "Defendant has a contractual right to refuse to renew a policy." (Dkt. 45 at 11–12.)

3

(*Id.* at 16 (emphasis added).) The Policy included "Option OL," which provided additional coverage for increased costs "caused by the enforcement of a building, zoning or land use ordinance or law." (*Id.* at 29.)

Before considering the parties' arguments regarding coverage exclusions, the Court first addresses whether roof replacement was generally covered by the Policy. As stated above, the Policy covered the cost "actually and necessarily spen[t] to repair or replace the damaged part of the property." (Dkt. 41-1 at 16.) While the Muirfield Design Standards obligated Plaintiffs to go above and beyond "repair[ing] or replac[ing] the damaged part of the property," nothing in the Policy language suggests that Defendant is obligated to cover such additional cost.

Plaintiffs argue that, because the "ordinance or law" exclusion set forth above does not include deed restriction requirements such as the Muirfield Design Standards, such requirements are covered by the Policy. Plaintiffs state that "if Defendant wished to exclude deed restriction requirements . . . , then it need only to have added it" to the exclusions. (Dkt. 45 at 11.) This argument assumes that the Policy's general coverage language includes additional costs imposed by deed restriction requirements, however. As discussed above, the additional cost of complying with the Muirfield Design Standards is not covered by the Policy.

### B. Ohio Administrative Code

Plaintiffs also point to Ohio Administrative Code § 3901-1-54(I), which provides that, "[w]hen an . . . exterior loss requires replacement of an item and the replaced item does not match the quality, color or size of the item suffering the loss, the insurer shall replace as much of the item as to result in a reasonably comparable appearance." Citing this regulation, Plaintiffs assert that "the roof is not repairable" and that the additional cost of complying with § 3901-1-54(I) is covered by Option OL. (Dkt. 45 at 2, 11.)

4

Plaintiffs' argument that Defendant must replace their entire roof under § 3901-1-54(I) fails for two reasons. First, § 3901-1-54(B) states that "[n]othing in this rule shall be construed to create or imply a private cause of action for violation of this rule." Second, in the absence of evidence of special circumstances regarding their particular roof, Plaintiffs effectively seek a blanket rule that no insurer could ever repair a wood shake roof in Ohio. While the Muirfield Homeowners Association apparently believes that wood shake roofs are replaceable, not repairable, this Court is not prepared to adopt such a rule.

As to Plaintiffs' breach of contract claim, the Court finds that there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law. This claim is therefore **DISMISSED**.

## III.  Misrepresentation

Plaintiffs allege that "Defendant misrepresented the terms of [Defendant's] coverage to Plaintiff that it would insure Plaintiff from accidental direct physical loss and pay costs 'actually and necessarily' incurred to the dwelling when in fact it only intended to pay for partial physical loss." (Am. Compl. ¶ 22.) Because Plaintiffs do not specify whether they allege negligent or intentional misrepresentation, the Court will address both.

### A.  Negligent Misrepresentation

For a claim of negligent misrepresentation, Ohio law provides that "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4

(1989).  Because Plaintiffs allege misrepresentation only by omission,[2] they do not state a claim for negligent misrepresentation.  *See Martin v. Ohio State Univ. Found.*, 139 Ohio App. 3d 89, 104 (2000) ("A negligent misrepresentation claim does not lie for omissions: there must be an affirmative false statement.").

### B. Intentional Misrepresentation

The elements of intentional misrepresentation are as follows:

> (a) a representation or, *where there is a duty to disclose, concealment of a fact*,
>
> (b) which is material to the transaction at hand,
>
> (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
>
> (d) with the intent of misleading another into relying upon it,
>
> (e) justifiable reliance upon the representation or concealment, and
>
> (f) a resulting injury proximately caused by the reliance.

*Carpenter v. Scherer-Mountain Ins. Agency*, 135 Ohio App. 3d 316, 327 (1999) (citing *Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St. 3d 69, 73 (1986); *Cohen v. Lamko, Inc.*, 10 Ohio St. 3d 167 (1984)) (emphasis added).

The facts pertinent to this claim are not in dispute.  Plaintiff William Wright purchased the Policy through Michelle Nix at the Mike McClaskie Insurance Agency, a captive agent of Defendant.  (Am. Compl. ¶ 2.)  Mr. Wright never met Mike McClaskie, and he had not met Ms. Nix until the day she took his insurance application.  (Wright Dep. 44–45.)  Mr. Wright testified that he applied for insurance in person, simply answering a "checklist of questions" by Ms. Nix.  (*Id.* at 27, 43–44.)  While there is no evidence that Mr. Wright sought or was offered advice

---

[2] The Amended Complaint states that, "[p]ursuant to exhibit C, Defendant represented to Plaintiff, 'We cover accidental direct physical loss to the dwelling . . .'" (Am. Compl. ¶ 9.)  This appears to be a mistaken and misquoted reference to the Policy, which is Exhibit D to the original complaint.  To the extent that Plaintiffs allege misrepresentations contained in the language of the Policy, their claim is for breach of contract, addressed above.

6

during this meeting, he testified that he "trust[ed] in [his] agent to give [him] what [he] need[ed] to cover the house." (*Id.* at 44.) During this meeting, Plaintiff was not yet aware of the Muirfield Design Standards, and he did not discuss them or request coverage for additional costs imposed by them. (*Id.* at 20–21, 24, 27–28, 56.)

The parties' arguments as to intentional misrepresentation focus on whether Defendant had a duty to advise Plaintiffs that the Policy would not cover roof replacement under the current circumstances. Under Ohio law, "[a]n insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance that its customer requests. When the agency knows that the customer is relying upon its expertise, the agency may have a further duty to exercise reasonable care in advising the customer." *Fry v. Walters & Peck Agency, Inc.*, 141 Ohio App. 3d 303, 310 (Ohio Ct. App. Williams Cty. 2001) (internal citations omitted) (citing *First Catholic Slovak Union v. Buckeye Union Ins.*, 27 Ohio App. 3d 169, 170 (Ohio Ct. App. Cuyahoga Cty. 1986); *Stuart v. Natl. Indemn. Co.*, 7 Ohio App. 3d 63, 66 (Ohio Ct. App. Cuyahoga Cty. 1982)). In such cases, therefore, the "agent must not only obtain the insurance requested, but also, advise [the] customer." *Wanner Metal Worx, Inc. v. Hylant Maclean, Inc.*, no. 02CAE10046, 2003 WL 1826558 at *6 (Ohio Ct. App. Delaware Cty. 2003) (citations omitted). "The customer, however, has a corresponding duty to examine the coverage provided and is charged with knowledge of the contents of his or her own insurance policies." *Fry*, 141 Ohio App. 3d at 310 (citing *Craggett v. Adell Ins. Agency*, 92 Ohio App. 3d 443, 453 (Ohio Ct. App. Cuyahoga Cty. 1993); *Nickschinski v. Sentry Ins. Co.*, 88 Ohio App. 3d 185, 195 (Ohio Ct. App. Cuyahoga Cty. 1993)).

Here, Plaintiffs did not specifically request the full roof replacement coverage at issue. Nor is there evidence that they sought or were offered advice regarding their insurance coverage.

7

Under these circumstances, Ohio law imposes no duty on the agent to advise Plaintiffs. Even if Plaintiffs had sought or were offered advice, they did not fulfill their corresponding duty to examine and to know the contents of the Policy. (Dkt. 45 at 6 (admitting that Mr. Wright "did not read the policy").)

As to Plaintiffs' claim for intentional misrepresentation, the Court finds that there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law. This claim is **DISMISSED**.

### IV. Bad Faith

Plaintiffs assert that Defendant acted in bad faith when it (A) refused to pay Plaintiffs' claim, (B) failed to obtain coverage through another insurer or advise Plaintiffs that they would not be covered, and (C) failed to renew the Policy. (Am. Compl. ¶¶ 24–27; Dkt. 45 at 13.)

#### A. Refusal to Pay

"[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 554 (1994) (citations omitted); *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276–77 (1983). Because the Policy did not cover full roof replacement under the circumstances, Defendant had reasonable justification for refusing to pay for it, and such refusal was not in bad faith under Ohio law.

#### B. Failure to Obtain Coverage or Advise Plaintiffs

Plaintiffs assert that Defendant "should have obtained insurance coverage from another insurer or warned [Plaintiffs] that [they] would not be covered." (Am. Compl. ¶ 16.) The extent of an insurance agent's duty to obtain insurance for and advise a client is discussed above. Having concluded that Defendant satisfied such duty, the Court cannot find that Defendant's actions constituted bad faith.

8

### C. Failure to Renew the Policy

While Plaintiffs concede that Defendant had the contractual right not to renew the Policy (Dkt. 45 at 11–12), they allege that the nonrenewal constituted bad faith. Defendant's renewal decisions are informed by a "knowledge-based system" (KBS) that monitors claims activity. (Yoho Dep. 24 (Dkt. 45-8 at 18).) Plaintiffs assert that the "entire process" of "luring" in a new customer "and then subjecting the newly insured to KBS which can result in the insured being turned out as a non-renewer, and losing their status with State Farm without informing them of the consequences is a bad faith process." (Dkt. 45 at 13.)

Plaintiffs also assert that Defendant acted in bad faith by waiting several months to inform Plaintiffs of the nonrenewal: "Defendant made the decision June 26, 2011 not to renew [the] policy, but did not inform Defendant until October 19, 2011." (Dkt. 45 at 13.) The Policy, which expired on December 3, 2011, provided that Defendant "may cancel by notifying [Plaintiffs] at least 10 days before the date cancellation takes effect." (Dkt. 41-1 at 2, 24.)

Defendant's actions were specifically authorized by the Policy, and Plaintiffs have identified no legal authority suggesting that these actions constituted bad faith. The Court finds that there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law. Plaintiffs' claim of bad faith is therefore **DISMISSED**.

### V. Conclusion

For the reasons discussed above, the Court hereby **GRANTS** Defendant's Motion (Dkt. 41), **DISMISSES** this case, and **DIRECTS** the Clerk to enter judgment.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE